IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

UNITED STATES OF AMERICA,
    Plaintiff,
v.                                                     Criminal Action No.3:08CR29

ZURI MILAN HOWARD,
    Defendant.

## REPORT AND RECOMMENDATION

On July 22, 2008, came the United States of America by Erin Reisenweber, Assistant United States Attorney, and the Defendant, ZURI MILAN HOWARD, in person and by his counsel, Brian Crockett, Assistant Federal Public Defender, for a hearing on Defendant's Motion to Suppress [19]. The Government presented Patrolman Harper as a witness and the Defendant's counsel, cross examined him.

### I. Background

Defendant, ZURI MILAN HOWARD, is the sole defendant in a three count indictment. He is charged with possession with intent to distribute in excess of 5 grams of crack cocaine, in violation of Title 21, United States Code, 841(a)(1) and other drug related offenses.

### II. Defendant's Motion to Suppress [19]

Defendant contends that on April 4, 2008, the officers did not have a "reasonable suspicion" to stop the Defendant and therefore had no right to conduct a *Terry* stop search.

The Government contends that the officers observed the Defendant walking in the middle of the street, where there is a sidewalk, in violation of City of Martinsburg Traffic Code Article 371.06 and West Virginia Code Section 17C-10-6. When asked to stop, the Defendant did not and his companion reached into his pockets. The Government contends that there was "reasonable suspicion" to stop the defendant and when the Defendant did not respond to the

officers order to stop and his companion reached into his pocket, a *Terry* stop search was necessary to protect the officers.

### III. FINDING OF FACTS

1. On April 4, 2008, Martinsburg City Police Officers Harper and English were assigned to a special drug interdiction detail.

2. At approximately 11:45 P.M. that night, near the 500 block of West Race Street, the patrolmen encountered two individuals walking down the center of Race Street, following the yellow line in the middle of the road.

3. Patrolman Harper testified that the area of Race Street, was, at the time, an area experiencing a high level of drug trafficking.

4. Patrolman Harper recognized both the defendant and his companion as individuals he had seen three days prior.

5. Patrolman Harper further testified that the officers exited their vehicle and identified themselves as police officers to the defendant and his companion. The officers ordered the defendant and his companion to stop. The defendant did not comply with the officers' orders and instead continued to walk away from the officers.

6. While continuing to walk from the officers, Mr. Howard's companion, eventually identified as Anthony Lucky, began to dig in his pockets.

7. The officers ordered Lucky to remove his hands from his pockets and further ordered both Howard and Lucky to place their hands on the wall. However, when Mr. Lucky placed his hands on the wall, a bag of white rock-like substance, which was later identified as crack cocaine, fell from his sleeve.

8. In addition, the officers also located a suspected ecstacy pill on the ground next to

defendant Howard.

9. At that time, the defendant was arrested for possession with intent to deliver crack cocaine; possession with intent to deliver ecstasy, and conspiracy to deliver a controlled substance. A search incident to arrest was then conducted of the defendant.

10. The officers' search of defendant's person yielded a folding knife with what appeared to be crack cocaine residue on it and a plastic baggie containing a number of other baggies with the corners cut off from them.

### IV. CONCLUSIONS OF LAW

1. Although the officers may not have been able, under West Virginia common law, to take the defendant into custody for violation of the sidewalk ordinance, the officers did have the right to stop the defendant and issue a citation for the violation which had just occurred in their presence.

2. Indeed, the Fourth Amendment provides citizens the right to be secure in their persons and against unreasonable searches and seizures. The Supreme Court has reiterated that these rights are not "second-class rights." *United States v. McCoy*, 513 F.3d 405, 410 (4th Cir. 2008), citing *Brinegar v. United States*, 338 U.S. 160, 180 (1949).

3. The Supreme Court has further set forth the "general rule that a search or seizure without probable cause is unreasonable and, thus, unconstitutional." *Id.* and *see Kyllo v United States*, 533 U.S.27, 32 (2001) (noting that searches without probable cause are "presumptively unconstitutional.")

4. However, this general rule is certainly not without exceptions and among "the most important of these exceptions, at least from the perspective of law-enforcement-officer safety, is the 'stop-and-frisk' doctrine" derived from the Supreme Court's decision in *Terry*. *Id., citing United States v. Holmes*, 376 F.3d 270, 275 (4th Cir. 2004).

5. The *Terry* court authorized police officers to stop a person who is behaving suspiciously

to question him briefly and, if the officers believe the person is armed, to pat down, or "frisk," him for weapons if the officers have a "reasonable suspicion," based on articulable, particularized facts, that "criminal activity may be afoot." *Terry*, 392 U.S. at 30.

6. In order to issue a citation to the defendant for violation of the city's traffic code, the officers had the right, given the circumstances before them that night, to ensure their own safety before dealing with the defendant and his companion.

7. That is, Patrolmen Harper and English had witnessed the occurrence of a misdemeanor in their presence. During the officers' attempt to issue a citation to the defendant for that violation, the defendant disobeyed the officers' commands to stop, continued to walk away, and defendant's companion began to dig in his pockets.

8. The propriety of a *Terry* stop is a "common-sensical proposition ... [properly] crediting the practical experience of the officers who observe on a daily basis what transpires on the street." *United States v. Lender*, 985 F.2d 151, 154 (4th Cir. 1993); *Accord United States v. Arvizu*, 534 U.S. 266, 273 (2002).

9. Furthermore, when determining whether an officer has reasonable suspicion for a stop and frisk, the Court undertakes a totality of the circumstances test. That is, an officer's articulated facts must, when taken as a whole, serve to eliminate "a substantial portion of innocent travelers before reasonable suspicion will exist." *McCoy*, 513 F.3d at 413, citing *Sokolow*, 490 U.S. at 7-11 and *United States v. Brugal*, 209 F.3d 353, 361 (4th Cir 2000) (en banc).

10. The fact remains in the case at hand, that prior to any frisk or search being conducted, crack cocaine fell from the sleeve of Mr. Lucky and a baggie containing an ecstacy tablet was located on the ground next to the defendant.

11. The search the officers then conducted of defendant was incident to his arrest.

12. Unfortunately for defendant, the crack cocaine fell from the Mr. Lucky's sleeve and any *Terry* frisk that might have occurred was converted into a search incident to arrest.

## V. DECISION

Pursuant to the above findings of fact and conclusions of law, it is hereby

**RECOMMENDED** that Defendant's Motion to Suppress [19] be **DENIED.**

The Defendant's objection to this ruling is duly noted.

**IT IS FURTHER ORDERED THAT:**

Any party who appears pro se and any counsel of record, as applicable, may, within ten (10) days after being served with a copy of this Order, file with the Clerk of the Court an original and two (2) copies of the written objections identifying the portions of the Order to which objection is made, and the basis for such objection. Failure to timely file objections to the Order set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Order.

The Clerk of the Court is directed to provide a copy of this Order to parties who appear pro se and all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

DATED: 8-5-08

DAVID J. JOEL
UNITED STATES MAGISTRATE JUDGE