**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG**

**UNITED STATES OF AMERICA,**

    Plaintiff,

v.                                                 **CRIMINAL NO. 3:08-CR-29
(Judge Bailey)**

**ZURI MILAN HOWARD,**

    Defendant.

## ORDER ADOPTING REPORT AND RECOMMENDATION

I.     Introduction

Pending before this Court is defendant Zuri Howard's Motion to Suppress [Doc. 19], which was filed on June 23, 2008. On August 5, 2008, Magistrate Judge David J. Joel submitted his Report and Recommendation [Doc. 27] in which he recommended that the motion be denied. On August 28, 2008, the defendant filed his Objections to Magistrate Judge's Report and Recommendation [Doc. 34]. The United States then filed its Response to Defendant's Objections [Doc. 35]. Having been fully briefed and this Court having reviewed the transcript of the suppression hearing, the Motion to Suppress [Doc. 19] is ripe for disposition.

Pursuant to 28 U.S.C. § 636(b)(1)(c), this Court is required to make a *de novo* review of those portions of the magistrate judge's findings to which objection is made. However, failure to file objections permits the district court to exercise review under the standards believed to be appropriate, and under these circumstances, the parties' right to

1

*de novo* review is waived. ***Thomas v. Arn,*** 474 U.S. 140, 150 (1985). Accordingly, this Court will conduct a *de novo* review only as to the portions of the report and recommendation to which the defendant objected. The remaining portions of the report and recommendation will be reviewed for clear error. Based upon the above, it is the opinion of this Court that the magistrate judge's **Report and Recommendation [Doc. 27]** should be, and the same is, hereby **ORDERED ADOPTED**; accordingly, the **Motion to Suppress [Doc. 19]** is **DENIED**.

II. Factual Background

In his Report and Recommendation, Magistrate Judge Joel made the following "Findings of Facts" with which this Court agrees:

1. On April 4, 2008, Martinsburg City Police Officers Harper and English were assigned to a special drug interdiction detail.

2. At approximately 11:45 P.M. that night, near the 500 block of West Race Street, the patrolmen encountered two individuals walking down the center of Race Street, following the yellow line in the middle of the road.

3. Patrolman Harper testified that the area of Race Street was, at the time, an area experiencing a high level of drug trafficking.

4. Patrolman Harper recognized both the defendant and his companion as individuals he had seen three days prior.

5. Patrolman Harper further testified that the officers exited their vehicle and identified themselves as police officers to the defendant and his companion. The officers ordered the defendant and his companion to stop. The defendant did not comply with the

2

officers' orders and instead continued to walk away from the officers.

6. While continuing to walk from the officers, Mr. Howard's companion, eventually identified as Anthony Lucky, began to dig in his pockets.[1]

7. The officers ordered Lucky to remove his hands from his pockets and further ordered both Howard and Lucky to place their hands on the wall. However, when Mr. Lucky placed his hands on the wall, a bag of white rock-like substance, which was later identified as crack cocaine, fell from his sleeve.

8. In addition, the officers also located a suspected ecstacy pill on the ground next to defendant Howard.

9. At that time, the defendant was arrested for possession with intent to deliver crack cocaine; possession with intent to deliver ecstasy, and conspiracy to deliver a controlled substance. A search incident to arrest was then conducted of the defendant.

10. The officers' search of defendant's person yielded a folding knife with what appeared to be crack cocaine residue on it and a plastic baggie containing a number of other baggies with the corners cut off from them.

III. Conclusions of Law

In his Report and Recommendation, Magistrate Judge Joel made the following "Conclusions of Law" with which this Court agrees:

1. Whether or not the officers were able, under West Virginia common law, to take the defendant into custody for violation of the sidewalk ordinance, the officers did have

---

[1] According to the testimony of Patrolman Harper, Mr. Howard's companion continued digging in his pockets despite having been ordered several times to take his hands out of his pockets. *See* Sup. Hr'g Tr. 8: 8-11, July 22, 2008.

the right to stop the defendant and issue a citation for the violation which had just occurred in their presence.

2. Indeed, the Fourth Amendment provides citizens the right to be secure in their persons and against unreasonable searches and seizures. The Supreme Court has reiterated that these rights are not "second-class rights." **United States v. McCoy**, 513 F.3d 405, 410 (4th Cir. 2008), citing **Brinegar v. United States**, 338 U.S. 160, 180 (1949).

3. The Supreme Court has further set forth the "general rule that a search or seizure without probable cause is unreasonable and, thus, unconstitutional." *Id*.; *see also* **Kyllo v United States**, 533 U.S.27, 32 (2001) (noting that searches without probable cause are "presumptively unconstitutional.").

4. However, this general rule is certainly not without exceptions and among "the most important of these exceptions, at least from the perspective of law-enforcement-officer safety, is the 'stop-and-frisk' doctrine" derived from the Supreme Court's decision in *Terry*. *Id.*, citing **United States v. Holmes**, 376 F.3d 270, 275 (4th Cir. 2004).

5. The *Terry* court authorized police officers to stop a person who is behaving suspiciously to question him briefly and, if the officers believe the person is armed, to pat down, or "frisk," him for weapons if the officers have a "reasonable suspicion," based on articulable, particularized facts, that "criminal activity may be afoot." *Terry*, 392 U.S. at 30.

6. In order to issue a citation to the defendant for violation of the city's traffic code, the officers had the right, given the circumstances before them that night, to ensure their own safety before dealing with the defendant and his companion.

7. That is, Patrolmen Harper and English had witnessed the occurrence of a

misdemeanor in their presence. During the officers' attempt to issue a citation to the defendant for that violation, the defendant disobeyed the officers' commands to stop, continued to walk away, and defendant's companion continued to dig in his pockets.

8. The propriety of a *Terry* stop is a "common-sensical proposition ... [properly] crediting the practical experience of the officers who observe on a daily basis what transpires on the street." **United States v. Lender**, 985 F.2d 151, 154 (4th Cir. 1993); *Accord* **United States v. Arvizu**, 534 U.S. 266, 273 (2002).

9. Furthermore, when determining whether an officer has reasonable suspicion for a stop and frisk, the Court undertakes a totality of the circumstances test. That is, an officer's articulated facts must, when taken as a whole, serve to eliminate "a substantial portion of innocent travelers before reasonable suspicion will exist." **McCoy**, 513 F.3d at 413, citing **Sokolow**, 490 U.S. at 7-11 and **United States v. Brugal**, 209 F.3d 353, 361 (4th Cir 2000) (en banc).

10. The fact remains in the case at hand, that prior to any frisk or search being conducted, crack cocaine fell from the sleeve of Mr. Lucky and a baggie containing an ecstacy tablet was located on the ground next to the defendant.

11. The search the officers then conducted of defendant was incident to his arrest.

12. Unfortunately for defendant, the crack cocaine fell from the Mr. Lucky's sleeve, and any *Terry* frisk that might have occurred was converted into a search incident to arrest.

IV. Discussion

As this Court has previously stated, it agrees with the findings of Magistrate Judge Joel. The defendant, however, states two objections to these findings. First, the defendant argues that the magistrate judge ignores Officer Harper's admission that when ordering Howard and Lucky to stop and place their hands on the wall, the officers were not arresting the men at that time; rather, the defendant argues that they were arrested upon the officers' discovery of the drugs, which was after the detention began. Second, the defendant argues that the magistrate judge confuses the Fourth Amendment jurisprudence governing police-citizen encounters and concludes that the Fourth Amendment attached when the officers ordered Howard and Lucky to stop and place their hands on the wall.

This Court does not find it necessary to restate its Conclusions of Law, which specifically address the issues raised in the defendant's objections. This Court will, however, reiterate the fact that when the officers initially encountered the two men, they were walking along the double yellow lines in the middle of the road at 11:45 P.M., in violation of state and local law. Further, the officers had ordered the men to place their hands on the wall only after the men had initially ignored the officers' orders to stop upon seeing Mr. Lucky digging in his pockets, completely disregarding yet another police order.

Based on the foregoing circumstances, this Court finds that the officers had a "reasonable suspicion," based on articulable, particularized facts, that "criminal activity may be afoot." *Terry*, 392 U.S. at 30. Thus, in order to issue a citation to the defendant for violation of the city's traffic code, the officers had the right, given the circumstances before them that night, to ensure their own safety before dealing with the defendant and his companion. The *Terry* frisk, however, never occurred because the bag of crack fell from

Mr. Lucky's sleeve, thereby converting it into a search incident to his arrest.

V.      Conclusion

For the foregoing reasons, and those more fully contained in the Report and Recommendation of Magistrate Judge Joel, the Court **ORDERS** as follows:

1. That Magistrate Judge Joel's Report and Recommendation **[Doc. 27]** is **ADOPTED**;

2. That the defendant's Objections to Magistrate Judge's Report and Recommendation **[Doc. 34]** are **OVERRULED**; and

3. That the defendant's Motion to Suppress **[Doc. 19]** is **DENIED**.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record herein.

**DATED**: September 8, 2008.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE